(21 Misc. Rep. 155.)

### BROWNING et al. v. COLLIS.

(Supreme Court, Special Term, New York County. August, 1897.)

1. CONSTITUTIONAL LAW—DUE PROCESS OF LAW.
    Though Consolidation Act, as amended by Laws 1893, c. 660, providing that title in the city of New York to property to be used for widening a street shall not become vested until after the filing of the commissioner's oath of estimate and assessment, thereby gives the city the right to withdraw from a purchase of the property any time before title becomes vested, yet after it becomes vested the city's right of further election is ended, and the owner's right to compensation is fixed, though subject to the overview of the courts empowered to confirm or reject the commissioner's report, and hence said laws are not repugnant to Const. N. Y. art. 1, § 6, and Const. U. S. Amend. 14, prohibiting the taking of property without due process of law.

2. SAME—EMINENT DOMAIN.
    Nor to the further provision of said section 6, prohibiting the taking of property without just compensation, and section 7, providing that, where private property shall be taken for public use, the compensation, when not made by the state, shall be ascertained by a jury, or by not less than three commissioners.

Motion in condemnation proceedings by William C. Browning and others against Charles H. T. Collis, as commissioner of public works, for injunction. Denied.

Swayne & Swayne (Wager Swayne, of counsel), for plaintiffs.
Francis M. Scott, Corp. Counsel (George L. Sterling, of counsel), for defendant.

RUSSELL, J.   The plaintiffs, who are the owners of valuable property on Elm street, in the city of New York, and employ many hundred men in their buildings on that street, seek to enjoin the commissioner of public works of the city from proceeding with the Elm street widening, a public enterprise of magnitude and great expense, on the ground that the acts under which the city proposes to take the property are unconstitutional, in that they violate the constitution of the state of New York (section 6 of article 1), depriving the plaintiffs of their property without due process of law, and taking the same for public use without just compensation; and those of section 7, which provide that where private property shall be taken for public use the compensation, when it is not made by the state, shall be ascertained by a jury, or by not less than three commissioners appointed by a court of record, as shall be prescribed by law; and as also offending the provisions of the fourteenth amendment to the constitution of the United States, prohibiting the taking of property without due process of law.   It is claimed by the plaintiffs that the acts under which these proceedings were taken, viz. the consolidation act, as amended by chapter 660 of the Laws of 1893, give the city the option to invest itself with the title and possession of the property at the outset of the proceedings, and to defer the election to take either, until the report of the commissioners of assessment is confirmed, and thereby practically giving the city the privilege, the correlative of which is not accorded to the owner, of completing the purchase if the authorities think the amount to be paid is not too great.   With reference to the act of May 22, 1897 (chapter 641), it is urged by the plaintiffs that no repeal is made expressly or by implication of the optional features of the previous statutes. and therefore the constitutional objection still exists.   I believe that neither the courts of this state nor the supreme court of the United States has yet decided that private property may be taken from the owner by the assumed right of eminent domain, with the privilege to the municipal authority at some indeterminate period in the future to retain that property, and pay for it by a compulsory award of commissioners, or to return the property to the owner if subsequent events demonstrate that it would not be a good purchase for the municipality.   Therefore, if the legislation upon the subject in question may be fairly construed to give a title to the city in a defeasible way, determined by its own election, exercised after the vesting of such title, such legislation is open to just constitutional condemnation.

The rule as it now stands, as recognized by the supreme court of the United States and the court of appeals of this state, is that whatever may be the incompleteness of any rights of the city or owner in preliminary proceedings with reference to the land, if a reasonable and sure method of providing compensation is awarded to the owner upon the devolution of title from himself to the municipality or state, the act itself is constitutional.   Sweet v. Rechel, 159 U. S. 380, 16 Sup. Ct. 43; In re Mayor, 99 N. Y. 577, 2 N. E. 642; Sage v. City of Brooklyn, 89 N. Y. 195.   The supreme court of the United States will follow the decisions of the highest court of the state in

the construction of statutes to determine whether they violate any provision of the state constitution, and there is no provision in the federal constitution which specifically acts upon the states in regard to their taking private property for any but a public use. Irrigation Dist. v. Bradley, 164 U. S. 112, 17, Sup. Ct. 56. The determination of what is or what is not a public improvement generally lies within the judicial discretion of the municipal authorities, and the opening or widening of a street is one which is always recognized as a proper subject of municipal discretion. In the construction of the statutes pertinent to this case it is important to adopt a sensible view of the purposes intended, and to accept the clear intent, even though conveyed through the medium of imperfect language. This is so especially in a case of public interest; and, contrary to the decisions of the highest courts of other states, even in a matter of private right, our court of appeals has held that a general statute, though covering in broad terms all kind of beneficiaries in the distribution, descent, and devolution of property by will, does not thereby intend to invite the crime of murder. Riggs v. Palmer, 115 N. Y. 506, 22 N. E. 188. It would be a labor of unnecessary minuteness of detail to here compare and criticise the language of the various acts giving to the city of New York the right of condemnation of private property for public uses. From my examination of those statutes, however, up to and including the act of 1893, I have become satisfied that the legislation, as it grew and advanced from chapter 86 of the Laws of 1813, through the various subsequent acts, including the consolidation act, up to and including chapter 660 of the Laws of 1893, designs to effect the transfer of property to the public use by providing a sure method of compensation to the owner from the moment of vesting of title, and that the only election on the part of the city in regard to the taking of property provided for by the legislation as it stood in 1893 was to be exercised before the vesting of any title whatever in the city. It is one thing to allow the city to withdraw from an unnecessary expenditure up to the moment that it obtains a legal right by the process of eminent domain to the lands of a private owner, and a far different thing to allow it an election to reject and return after it has taken away the title from such owner. It is also apparent that the mere use of the term "vested title" may be consistent with the vesting of a defeasible instead of a certain title; but it has never yet been held that any of these statutes give election to the purchaser to reject title which has been once taken from an owner by contract in invitum, and it would be a strained construction which should hold that to be the intent of the legislature. The ordinary presumption in a deed or instrument, or a legislative act providing for the vesting of title by a devolution from the owner, is that the title shall be absolute and indefeasible; and manifest and clear intent to the contrary must be evident before a contrary construction may be given, which construction would have the additional objection of being liable to the charge in this case of a defiance of constitutional power. All doubtful language of the acts in question may be readily assimilated to the favorable construction, and all inferences of election on the part of the city

are determined by the vesting of the title itself; and such construction would be in harmony with the common-law presumption that any power of election is absolutely determined by an unequivocal act of the vendee in the exercise of his option by the taking of title or the acceptance of title or possession on or after the day when the title shall devolve. The act of 1897 (chapter 641) confirms and corroborates these views. That act vests in the city in fee simple all the lands and tenements and interests in question as described in the map in the city of New York on the 1st day of May, 1897, and gives to each owner of any interest his absolute right to an award, with interest from the 1st day of May, 1897. It is unnecessary to refine with legal reasoning as to whether this statute repeals by implication any of the previous legislation, for its meaning is unmistakable, in my judgment, and determines forever the rights of the city to the property and the owners to compensation. That compensation is to be awarded by the commissioners under the constitution, and that award is subject to an overview by the courts, in which, as we generally recognize, the ultimate resort for exact justice may always be found. The opinion of Justice Patterson on the motion for the appointment of commissioners of estimate and assessment, so far as applicable here, has been of essential service in determining this motion.

Motion denied, with $10 costs.