a reasonable explanation of their attitude, that they are somewhat reluctant to take advantage of this feeling of distrust and hostility towards Heinze and his company, which prompts the Boston & Montana Company to offer more than the property is worth. To grant the injunction prayed for would be to control absolutely the votes of the stockholders, and deprive them of any discretion, and prevent their considering propositions and questions that may affect the interests or business standing of their company. So long as they act in good faith and within their authority, it is their province to consider these matters, and it would not be proper for this court to prevent their so doing. The power to transfer this real estate, and the mode and manner in which the same shall be exercised, are governed and controlled by the lex loci rei sitæ. If it be illegal under the Montana statutes, as construed by the courts of that state, for a corporation to sell to other than the highest bidder, or if that be waste, and such a sale would be a legal wrong to the corporation or its stockholders, an appropriate remedy will doubtless be found in the courts of that state by injunction, or an action in behalf of the corporation against those voting for such sale. The majority stockholders are amply responsible to repair any damages to the corporate interests for which they may become liable. It does not satisfactorily appear that irreparable damages will be sustained if an injunction be not granted.

I am unable to agree with the contention of the learned counsel for the plaintiff that, to prevent a multiplicity of suits between these rival companies, the court may, in this action to which neither is a party, be influenced by the fact that a sale to one would lessen while a sale to the other would increase litigation between them. The plaintiff does not show a right to equitable relief by injunction free from reasonable doubt, or a present necessity or fitness or serious exigency requiring interference by a court of equity foreign to the domicile of the corporation. Cumberland Coal & Iron Co. v. Hoffman Steam Coal Co., 30 Barb. 171; McHenry v. Jewett, 90 N. Y. 58; Atlantic & P. Tel. Co. v. Baltimore & O. R. Co., 46 N. Y. Super. Ct. 377–424.

Upon this statement of facts, with the reasons for my decision, and without making formal separate findings of fact and conclusions of law, I direct that judgment be entered dismissing the complaint, with costs.

--------

(26 Misc. Rep. 257.)

### In re OPENING OF EAST 169TH STREET.

(Supreme Court, Special Term, New York County. February, 1899.)

1. GREATER NEW YORK CHARTER—STREET OPENINGS—ASSESSMENT OF BENEFITS AND DAMAGES.

   Where proceedings for opening a street were instituted under the consolidation act (Laws 1882, c. 410), and the city acquired the title to the property before the new charter took effect, the damages and benefits for the improvement must be assessed under the consolidation act, under Greater New York Charter, § 1614 (Laws 1897, c. 378), continuing all proceedings and preserving all rights and remedies existing under the

·consolidation act at the time of the taking effect of the charter, unless otherwise specially provided.

2. SAME—ASSESSMENT OF BENEFITS AND DAMAGES—INTEREST.

In assessing the benefits and damages for a public improvement, interest cannot be included in the award of the commissioners.

3. SAME—AREA OF ASSESSMENT.

In assessing the benefits and damages through a street opening, the area of the assessment is within the discretion of the commissioners, unless a fundamental mistake appears.

Proceedings for the opening of East 169th street in the city of New York. Heard on objections to the confirmation of the report of the commissioners. Confirmed.

John Whalen, Corp. Counsel (John P. Dunn and Thomas C. Blake, of counsel), for city.

Ernest Hall and Thomas S. Bassford, for William N. Clark and others.

Truman H. Baldwin, for A. Newbold Morris and others.

John C. Shaw, for other property owners.

Charles V. Gabriel, for Annie Baird.

RUSSELL, J. In considering the objections to the confirmation of the report of the commissioners in the imposition of burdens upon the property owners and the city, it is important to bear in mind, as a guiding key, the important fact that the proceeding originally instituted deprives the owners of property of a portion of their rights, and takes from them that part of the property which is to be used for street purposes. It is essential to remember that the theory upon which the vesting of title to lands in the city, prior to the receipt of compensation, by proceedings in invitum, is based, is the certainty that at a fixed date the title to the lands vests in the city, and the right of the owners to compensation is then equally as absolutely fixed. In the case of Browning v. Collis, 21 Misc. Rep. 155, 47 N. Y. Supp. 76, the justice before whom this motion is pending had occasion to consider the constitutionality of the consolidation act, as amended by chapter 660 of the Laws of 1893, and held that, though the language of the statutes was somewhat ambiguous, the clear intent was not to give the city any option of relinquishment to the owners after the date of the vesting of the title, and that all that the statutes, from the initial one contained in chapter 86 of the Laws of 1813 down to and including the act of 1893, designed to provide, was a sure method of compensation to the owner from the moment of vesting the title in the city. The proceeding for this street opening was begun by resolution of the board of street opening and improvement on the 14th of September, 1894. The title to the lands was acquired by the city on the 16th of September, 1896. From that moment, therefore, the city owned the title to the lands taken for the streets, and was entitled to their use. Correlatively, therefore, the owners had the right to look to the law as it then stood for compensation. It may therefore be fairly assumed that, so far as valuations for compensation are concerned, the owners had the right to treat the subject as one then fixed by law. The same

is in a measure, though not, perhaps, to the whole extent of the rule in case of the interest to be paid for, the same in regard to the imposition of burdens. The commissioners must necessarily, in considering how much benefit an owner shall pay for the local improvements, take a fair and just view of the property surrendered or injured, belonging to those same owners. In those cases where any of the property of the benefited owner is taken, his compensation comes by deduction from the amount of assessment for benefit. He should therefore have the right to rely upon the law as it was when his property was taken from him. So that, while his measure of compensation is adjusted under one law then in force, the burden to be imposed for benefits should not be imposed under a law subsequently passed.

These considerations do not necessarily bring us to the question of constitutionality of the law thereafter enacted regulating a different method of assessment for benefit. They are sufficiently pertinent in determining the intent of the legislature, so far as the courts have to construe the provisions of the charter of New York City taking effect January 1, 1898. For the purposes of uniformity of action and preventing confusion, it may be fairly assumed that the legislature did not intend to increase the burden of owners of property affected by local improvements inaugurated under prior laws. This view is strengthened by section 1614 of the charter act (Laws 1897, c. 378), preserving all rights and remedies, and continuing all proceedings under the consolidation act under the laws then existing, unless otherwise specially provided. The conclusion therefore follows that the commissioners were right in limiting the benefits to one-half of the value of the lot as fixed by the tax commissioners, instead of possibly increasing that limit to one-half of their own valuation, as permitted by the charter taking effect January 1, 1898.

Similar considerations are effective in regard to the award of interest. It may also be remembered that interest is the compensation awarded for the use of the property taken from the owner, and thereafter enjoyed by the city. It is a fixed sum, and, under the theory of the consolidation act, follows as an incident from vesting the title. The theory of assessment for local improvements of this character is that, in the eye of the law, from the moment a city owns the property certain lot owners are benefited, although the actual improvement may be delayed by the work to be performed in rendering that benefit available. The question is, therefore, how much an owner of a lot is benefited or injured at the time the city takes the property. From that moment it becomes, in the law, the property of the city for street purposes; and, as the use of it belongs to the city for public purposes, the imposition of the expense of that use as an equivalent for the deprivation to the owner is a public expense. Without controlling language in the statute, the property owners should not pay for the public use of a street. The commissioners were therefore right in not including in their awards and assessments for benefit any interest upon the awards made by them.

The area of assessment is within the discretion of the commis-

sioners, unless some fundamental mistake appears. In re Cruger, 84 N. Y. 619; Genet v. City of Brooklyn, 99 N. Y. 308, 1 N. E. 777. The commissioners had the right to consider that the eastern owners were more largely benefited than those on the west, especially as the map of the assessment sheets indicates a direct extension to the east, while it does not to the west.

The report of the commissioners is confirmed.

---

(26 Misc. Rep. 663.)

### PERSONS et al. v. GARDNER et al.

(Supreme Court, Special Term, Erie County. March 21, 1899.)

1. INSOLVENT BANKS—SUIT AGAINST STOCKHOLDERS—RECEIVERS.
    Laws 1897, c. 441, amending Banking Law, § 52 (Laws 1892, c. 689), by providing that actions to enforce the liability of stockholders of insolvent banks shall be brought in the name of a receiver, where the bank has been dissolved and a receiver appointed, applies to banks in liquidation at the time of its adoption.

2. SAME—DUE PROCESS OF LAW.
    Since Laws 1892, c. 689, § 52, making bank stockholders individually liable for the debts of the bank to the extent of the par value of the stock, merely gave the creditors of an insolvent bank the right to one suit against all stockholders by one creditor for the benefit of himself and all other creditors, Laws 1897, c. 441, amending said section 52, by providing that a suit against the stockholders of an insolvent bank shall be prosecuted only in the name of the receiver of such bank, is not, as against the stockholders, void, as depriving the creditors of their property without due process of law, or as impairing the obligation of existing contracts.

3. PLEADING.
    In a complaint to enforce the liability of stockholders of an insolvent bank, an allegation that defendants were stockholders within two years before the commencement of the action, there being no allegation that they transferred their stock, sufficiently shows them to be stockholders, where the objection is by demurrer; since, for the purpose of the demurrer, it will be presumed that they remained stockholders until the dissolution.

4. SAME—TIME FOR COMMENCEMENT OF ACTION.
    Where the assets of an insolvent bank are insufficient to pay its debts, suit may be commenced for the enforcement of the stockholders' liability before the amount of the deficiency has been definitely ascertained by the conversion of the assets into cash.

5. PLEADING—DEMURRER—CAPACITY TO SUE.
    Where a demurrer, because of failure to state facts sufficient to constitute a cause of action, presents all the questions, a demurrer for want of legal capacity to sue is unnecessary.

Action by Henry H. Persons and another, as receivers of the Bank of Commerce in Buffalo, against William H. Gardner and others. Heard on demurrers to the complaint. Overruled.

Norris Morey, for plaintiffs.
John G. Milburn, for defendants Clarke and Rogers, as executors, and Hollister and Masten.
Seward A. Simons and Maulsby Kimball, for defendant Reed.
Roland Crangle, for defendant Saxton.